**STATE v. CREWS, et al.**

**No. 3391-AP.**

Circuit Court, Duval County, Criminal Appeal.

December 31, 1959.

Carl G. Swanson and Lloyd Bass, both of Jacksonville, for appellants.

Hudson Olliff, Assistant County Solicitor, for the state.

JOHN M. McNATT, Circuit Judge.

By information, the appellants, Fuller Warren Crews, Walden H. Massey, and Alfred F. Padgett, were charged with unlawfully damaging and injuring telephone equipment of another in violation of chapter 822.10, Florida Statutes. After "not guilty" pleas, they were tried in the criminal court of record of Duval County. Despite their denials and their alibis, they were found guilty as charged, and all three were sentenced to six months at hard labor in the county jail. In addition to the confinement, Crews and Massey were required to pay the costs of prosecution in the amount of $203 each, failing which they were to be confined an additional sixty days.

Each of them has appealed. On his appeal, Padgett asserts that — (1) there was error in admitting into evidence a pistol taken by an alleged "unlawful search and seizure" from the "getaway" car by one of the police officers; (2) the court erred in denying his motion for mistrial upon the ground that in testifying a witness for the prosecution referred to the "telephone booth robbery", and identified the pistol as having been found in the "abandoned" car; and (3) the evidence was insufficient to sustain the conviction. On their appeals, Crews and Massey make the same contentions regarding denial of their motion for mistrial, and claim that the evidence is so tainted by hearsay that their convictions should not be allowed to stand. These are the only contentions made in the briefs and oral arguments by the appellants.

According to the state's evidence, the alleged offense occurred in Jacksonville during the early morning hours of December 28, 1958. As Crews and Massey had been police officers of the City of Jacksonville, they were readily recognized by other officers. About 2:30 A.M., on said date, two police officers observed a 1958 two-toned Pontiac (owned by Padgett) parked with its lights off near a telephone booth. Crews was at the wheel of the Pontiac; there was another man (Massey) in the telephone booth, and a third man (Padgett) in the back seat of the Pontiac. As the officers approached the parked Pontiac, the man in the booth stepped into the car and it sped away. The two officers observed that the top of the telephone (upper housing) had been removed, and they gave chase to the Pontiac, reporting their actions by radio to police headquarters and that a break-in was suspected. After four or five miles, they lost the speeding Pontiac and returned to the telephone booth. There they found that four screws had been taken out of the telephone, the upper housing was on the floor of the booth, the lock had been sprung, and the telephone would not work.

Another police officer heard the radio report of the suspected offense and pursuit. He located the Pontiac and took up the chase in a police wagon at a high rate of speed. After several blocks, the Pontiac stopped and the three appellants (all of whom were known to and recognized by the officer) jumped out and ran to the back of a building. The two police officers who initiated the pursuit came to the scene and identified the Pontiac as being the automobile they had pursued. It was taken to police headquarters and searched by one of the investigating police officers and a pistol was taken from the glove compartment. After abandoning the Pontiac, the three appellants eluded the officers and escaped. But around 11 A.M., Padgett came to the home of the officer who had seen him jump out of the Pontiac and run, and told him the police had his car and pistol; that he had been out with a girl all night, and that someone had taken his car. Prior to that time, Padgett had talked with the girl for the purpose of getting her to substantiate his alibi. One day later, Padgett admitted that his alibi was a lie, and that he had been in the back seat, but claimed that he was drunk and knew nothing about what was going on.

At the trial, Crews and Massey offered alibis somewhat similar to the admittedly fabricated alibi of Padgett. But, as above indicated, the jury rejected their denials; disbelieved the alibis; resolved the conflicts in the evidence against them, and found all three defendants (appellants) guilty as charged.

The contention that the pistol was erroneously admitted in evidence is based upon the proposition that as the search of the automobile was without a warrant and was not made in connection with an arrest or by the consent of the owner, there was an "unlawful search and seizure". Also, it is asserted that as the pistol was not used in the commission of the offense charged, there was prejudicial error in admitting it into evidence. However, the law does not prohibit all searches without a warrant, but only such as are unreasonable. Longo v. State (Fla.), 26 So. 2d 818; Joyner v. State (Fla.), 27 So. 2d 349. In this case, the automobile sped away from the scene of a suspected break-in, and after the chase the occupants were observed to abandon it and to flee into the night. Under these circumstances, there was probable cause, and the search and seizure without a warrant was reasonable and justified. Gaskins v. State (Fla.), 89 So. 2d 867. Whether the pistol was used in the commission of the offense is immaterial. It was in the automobile and identified as belonging to one of the occupants. It was a part of the circumstances surrounding the offense, and there is no sound basis for a ruling that its admission was error or, if error, that it was prejudicial to any of the appellants.

In connection with the identification of the telephone housing and other articles that were in the telephone booth, a police officer referred to them in his testimony as having been collected at the scene of "a telephone booth robbery". Counsel objected and requested the court "to instruct the jury to disregard the statement" which was promptly and properly done by the trial judge. The same witness referred to the pistol as having been "found in an abandoned car". Upon objection, the trial judge directed that the statement be stricken. Subsequently, the defendants moved the court to direct a mistrial, asserting that the statements were so prejudicial that no instruction could erase them from the minds of the jury, and they now contend that the denial of their motions was error.

The contention is without merit. It is obvious that the witness was not referring to some other crime, but to the very offense for which the defendants were on trial. The trial judge took appropriate action to eliminate the statements from consideration by the jury, and there is no good reason to suppose that the jury disregarded the instructions or that the defendants were prejudiced by the stricken statements. Consequently, there is no basis for holding that the motions for mistrial were erroneously denied. Commonwealth v. Petrillo, 341 Pa. 209, 19 A. 2d 288.

The "hearsay" testimony complained about by Crews and Massey consists of admissions made by Padgett, and related by witnesses for the state with whom Padgett had discussed the incident. In each instance, the trial judge instructed the jury that the admissions or statements of Padgett were to be considered as to him only and could not be considered as against Crews and Massey, who were not present at the time Padgett made the statements. The statements were admissible as to and against Padgett, and the fact that they tended to implicate Crews and Massey did not render them inadmissible. Neither Crews nor Massey sought a separate trial, and the trial judge sufficiently instructed the jury that the statements were evidence against Padgett only. Stoutamire v. State, 133 Fla. 757, 183 So. 316; 13 Fla. Jur. 240.

Review of the evidence reveals that there was substantial competent evidence against each of the defendants to support the verdict against him. Padgett's claim that though he was in his own automobile at the scene of the crime he was drunk and without guilty knowledge of the offense conflicted with other evidence against him, including the testimony that he jumped from the automobile and ran. A man so drunk that he did not know that a crime had been committed would hardly be in condition to jump

from an automobile and run, and an innocent man would hardly flee into the night to avoid facing officers of the law. Crews was positively identified as being the driver of the Pontiac, and Massey was positively identified as one of the three persons who abandoned it and eluded the police officers. Although the defendants offered evidence, including their alibis, that they were not even together, there was positive testimony that they were. As regards all this, it was the province of the jury to sift the wheat from the chaff and to decide the questions of fact. It did so and none of the appellants has shown a valid reason for disturbing the verdict of the jury. Sealey v. State (Fla.), 46 So. 2d 894. Johnson v. State (Fla. App.), 101 So. 2d 180; 2 Fla. Jur. 599, section 344.

As I am of the opinion that there was no harmful, if any, error in the matters complained of by the several appellants, and that there was substantial competent evidence to support the verdict against each of them, the judgment is affirmed as to each of the appellants.